(120 So. 52)

No. 29059.

**WICKLIFFE v. COOPER & SPERIER et al.**

Nov. 26, 1928.

Rehearing Denied Jan. 28, 1929.

Dymond & Levy, Martin H. Manion, Harold A. Moise, Noah Lord, and George C. Schoenberger, Jr., all of New Orleans, for appellant.

Buck, Walshe & Buck, of New Orleans, for appellee Security Building & Loan Ass'n.

W. J. Hennessey, of New Orleans, for appellees Cooper & Sperier.

Spearing & Mabey, of New Orleans, for appellee United States Fidelity & Guaranty Co.

OVERTON, J. This suit grows out of a contract to repair and remodel an old residence, located in the city of New Orleans. The objects of plaintiff, in entering into the contract, were to convert the building into an apartment house, containing four apartments; to provide for the heating of the apartments; and to put the building in repair. It is plaintiff's contention that the contractors, Cooper & Sperier, who are among the defendants herein, breached their contract by not only refusing to install, in accordance with its terms, the kind of heating system she desired, but also by doing inferior work and by failing, though put in default, to complete the contract in accordance with the plans and

specifications. It is also her contention that the Security Building & Loan Association—another of the defendants in the case—which had agreed, under the terms of a mortgage granted by plaintiff on the premises to be improved, to furnish for her benefit money with which to carry out the contract, and to disburse the money in accordance with the terms thereof, breached its agreement by making the first and only payment made to Cooper & Sperier improperly, in that the association made the payment for inferior work done, and in that it refused to permit the use of the amount it had agreed to furnish, to enable her, through other contractors, to complete the contract and to minimize the loss that was being occasioned by the breach of the contract by Cooper & Sperier. It is also her contention that the surety of the contractors, the United States Fidelity & Guaranty Company, one of the defendants herein, breached its contract, by failing to complete the work, undertaken by its principals, and to remedy the defects in the work done by them.

The purposes of the suit are to have it decreed that Cooper & Sperier, the United States Fidelity & Guaranty Company, and the Security Building & Loan Association have violated their contracts; to have it decreed that the first and only payment made to Cooper & Sperier by the Security Building & Loan Association, amounting to $2,940, was improperly made; to recover of that association $14,700, the amount that the association agreed to furnish and disburse, to the end that the amount may be used in the completion of the building contract; to recover of all three defendants, in solido, $7,300, as penalties, already accrued, for the failure to complete the work within the time specified in the contract, and for such future penalties, at the rate of $10 a day, as may accrue, arising from the same cause; to recover further judgment against defendants in such sum as the evidence may justify for the deterioration of the building, brought about by defendants' leaving it in an unfinished and unprotected condition, following their alleged default; to recover of Cooper & Sperier and their surety the cost beyond the amount of the formers' bid, which, due to the rise in material and labor, may be necessary to complete the building in accordance with the contract; and to require the surety on Cooper & Sperier's bond to cause to be canceled the liens recorded and which may be recorded against the building, growing out of the building contract.

The defendants answered the suit. They deny, among other things, that they breached their contracts, or were in default, or that the work done by Cooper & Sperier was not done in accordance with the contract. They aver that plaintiff, in effect, terminated the contract with Cooper & Sperier to remodel and repair the building by refusing to comply with her part of the contract to furnish the plumbing and heating fixtures, contemplated by that instrument, at a time when the work of remodeling and repairing could not progress properly until these fixtures were supplied, and by insisting, after the contract was signed and the work commenced and partly completed, that the contractors install a system of heating, not contemplated by the contract, which could not be successfully installed without making material changes in the construction of the building, and by refusing to permit Cooper & Sperier to continue with their work. In addition to the foregoing, which is substantially alleged by all defendants, Cooper & Sperier aver that they did certain extra work for plaintiff, consisting of the erection of a garage on the premises, for which they claim they are entitled to $489.05, and sue for that sum in reconvention. They also aver that the work actually done by them on the building they contracted to remodel and repair amounts to $6,920.02,

including extras thereon, and they also sue plaintiff for this amount in reconvention.

On the trial of the case it appeared that plaintiff purchased property on Peters avenue, in the city of New Orleans, on which stood a large residence, built over 50 years ago. The building on this property, which was in fact a duplex apartment house, was moved some years ago from the center of the plot of ground on which it stood to a point near the property line. Plaintiff desired to remodel this building, so as to convert it into an apartment house, containing four apartments, and to make extensive repairs on it. She applied to one of the defendants herein, the Security Building & Loan Association, for the money with which to make the desired improvements. The association virtually agreed to lend her the money she desired, on her having plans and specifications made, provided the plans and specifications were approved by J. J. Baehr, the building expert of the association, whose duty it was to examine the plans and specifications to better enable the association to determine whether to make the loan. Plaintiff then employed the Home Construction Company, of which J. W. Billingsley was manager, to prepare the plans and specifications. In due course, and after various consultations between Billingsley and the employees of his company and plaintiff, the plans and specifications were prepared and submitted to plaintiff. Plaintiff, it seems, then asked for an estimate of the cost of doing the work. Cooper & Sperier, defendants herein, submitted an estimate of $26,000. Plaintiff informed them that she did not care to expend that much money in repairing and remodeling the building, and that, under the circumstances, she would have new plans and specifications prepared. Cooper, of the firm of Cooper & Sperier, offered to make suggestions to plaintiff as to how the plans and specifications could be amended so as to reduce the costs. Plaintiff accepted the offer and Cooper assisted in making the amendments. Finally, the work of making the amendments was completed. The plans and specifications were then submitted to Baehr, the building expert of the Security Building & Loan Association, and upon their receiving his approval the loan was perfected in the usual manner pursued by building and loan associations.

Plaintiff then asked for bids under the plans and specifications, as amended, and Cooper & Sperier submitted a bid of $14,700, which was accepted. A contract was signed providing, among other things, that the work should be done in strict accordance with the plans and specifications, which were made part of the contract. The contract also contained a provision to the effect that the money loaned by the Security Building & Loan Association to plaintiff should be paid to Cooper & Sperier by the association in installments as the work progressed, and a clause reading as follows:

"All of said work is to be done to the satisfaction and under the direction of John J. Baehr, the expert of the party of the third part (meaning the Security Building and Loan Association) or any other known capable expert to be appointed by said party of the third part, whose decision shall be final."

About the time the foregoing contract was signed Cooper & Sperier furnished a bond with the United States Fidelity & Guaranty Company as surety to guarantee the faithful performance of the contract, and the payment of all subcontractors, laborers, and furnishers of material. The contract itself was signed by plaintiff, the members of the firm of Cooper & Sperier, the United States Fidelity & Guaranty Company, and the Security Building & Loan Association.

After the execution of the contract, the work of remodeling and repairing proceeded for a time with reasonable rapidity. However, about a month after the work had be-

gun, trouble arose. The time had arrived for the installing of the pipes for the reception of the plumbing fixtures. Cooper & Sperier called upon plaintiff to furnish the plumbing to be installed by them, which, under the contract, it was her duty to furnish. As a result of this demand, it appeared that plaintiff wished the Arcola heating system installed, to consist of four units, so that the heat could be turned on or off in each of the four apartments without interfering with the other apartments. It is plaintiff's position that it was understood from the beginning that the Arcola system should be installed. On the other hand, Cooper & Sperier contend that such was not their understanding; that the plans and specifications do not contemplate the installation of such a system, and that the building was so constructed as not to admit of putting it in, without making material and expensive alterations in the work already done, which, it is urged, was done in accordance with the plans and specifications. Efforts were made to settle amicably this dispute, but without success.

Pending the dispute, plaintiff employed an expert to examine the work done and to make report. Later, she appointed another expert. The reports made by these experts satisfied her that there were defects in the work done, some of which, it was reported, were of such a nature as to require that some of the work done be taken out and done again. Plaintiff, through her attorney, made written demand on Cooper & Sperier to correct the defects reported to her by the first expert that she appointed. Failing to receive a satisfactory response to this demand, and failing in her efforts to satisfy Cooper & Sperier that they were called upon to install the Arcola system, she directed the Security Building & Loan Association to make no further payments to them, and refused to permit them to have anything further to do with the completion of the contract. Later, plaintiff took steps to relet the contract, but the Security Building & Loan Association, at that time, refused to pay her, under conditions then existing, any part of the loan made her for that purpose, which forced her to desist in her efforts, though later, towards the end of the trial of this case, under an agreement made, which will be hereafter referred to again, the association paid her, or paid for her benefit, the balance of the loan on hand, to enable her to complete the work through another contractor.

Plaintiff's right to recover depends primarily upon whether she had a right to demand the installation of the Arcola heating system, and upon whether the work, in so far as completed by Cooper & Sperier, was not in accordance with the contract, but instead was imperfect and inferior, or upon either. Upon these two questions a record exceeding 2,200 pages has been built, of which some 1,800 pages consist of parol evidence.

The specifications, under which the work was to be done are vague in many particulars, and especially is this so relative to the plumbing and heating. The plans indicate nothing, at least of any consequence, as to what particular kind of heating system should be installed. So far as the plans throw any light on the question they rather exclude the Arcola system, insisted upon by plaintiff. They do not show the necessary flues for the escape of the smoke from the fuel for that system. The only provisions that the specifications contain, relative to heating, are the reference, under the heading of "Plumbing," reading, "Plumber, see heating," and under the heading, "Gas Fittings," the following:

"Heating to be furnished by owner and installed by contractor."

The plans and specifications, as stated, throw no further light upon the question. Parol evidence was offered, touching the kind of heating system to be installed, and was

received. It clearly appears from this evidence that plaintiff, in no event, wished an Arcola system that burned gas, for the reason that natural gas was not then available, and it would be too costly, in her view, to burn artificial gas to operate that system, but beyond this the evidence is conflicting. Cooper, of the firm of Cooper & Sperier, who was the active member of the firm in obtaining and executing the contract, testified that it was his understanding that an ordinary gas heating system was to be installed. Bodenger, whose firm held the subcontract for the installation of the plumbing and heating, testified that before submitting a bid in behalf of his firm he called on plaintiff to ascertain what kind of heating she intended to furnish for installation, and that the information received was that plaintiff would furnish a gas radiator heating system, and that he based the bid made by him to Cooper & Sperier accordingly. On the other hand, it is denied that plaintiff so informed Bodenger, and evidence, which is denied, was offered to show that it was understood that the Arcola system should be installed, and that all bidders, including Cooper & Sperier, were verbally notified accordingly. While the dispute was pending, as to what heating system the contractors were required to install, upon its being furnished them, Baehr, the expert of the Security Building & Loan Association, whose decision, under the terms of the contract, was to be final as to the manner of its execution, ruled that Cooper & Sperier could not be required, under the contract, to install the Arcola system. The bids made by Cooper & Sperier, and especially by their subcontractor, are suggestive that it was not their understanding that the Arcola system was to be installed, for the record discloses that it would have cost much more to install that system than a gas radiator system, which they state they understood was contemplated. The conduct of Cooper & Sperier, in executing the contract, also tends to show that it was not their understanding that the Arcola system was to be installed, for, in building the roof which was a flat one, they built it, though consistently with the specifications, too low to admit of the passage of the pipes for the Arcola system, which would have necessitated the making of material, expensive, and, perhaps, unsatisfactory changes in the construction of the work to install that system—a condition which it is unlikely they would have permitted in their own interest to arise; had they understood that the Arcola system was to be installed. In our view, and such was the opinion of the trial judge, plaintiff, though sincere in her contentions and beliefs, has failed to establish that she was entitled to have installed, under the contract, the Arcola system, and was without right to demand its installation thereunder.

As relates to the complaints concerning the manner in which Cooper & Sperier were executing the contract, if the report of the two experts appointed by plaintiff be accepted at its face value, the work was being done by the contractors, in many respects, very imperfectly. However, in considering these reports and the evidence of these witnesses, it should be borne in mind that the work was stopped in an incompleted state. In this connection it must also be taken into account that some contractors do a piece of work in one way and some in another way, both reaching the same general result in the end. It should also be taken into account, in considering these reports, that plaintiff was repairing and remodeling an old building, and that the specifications gave Cooper & Sperier the right to use old material in good condition, wherever possible. When these facts, which are supported by the evidence, are taken into account many of the numerous alleged defects shown by these reports are satisfactorily explained, and prove to be, not

in reality, defective work. As to the remaining alleged defects, shown by these reports, some of them consist of failures to do work, not in fact called for by the specifications, and hence cannot be properly classed as defects under the contract. Baehr, the expert of the Security Building and Loan Association, to whose satisfaction the contract required the work to be done, testified that, upon the whole, the work was done, so far as it had progressed, in substantial accordance with the plans and specifications. Bartholomew, an expert appointed by the Security Building & Loan Association, made an examination of the work, first, independently of the reports made by plaintiff's experts, and then in connection with the report made by the first expert appointed by plaintiff. whose report was then the only report of plaintiff's experts at hand. His report, and the evidence given by him touching it, is in substantial accord with Baehr's view. It is true that, in the execution of the contract, there were two or three pieces of defective work, such as failing to remove two pieces of defective studding and the building of a side porch so as to protrude slightly across the property line, assuming that the latter be deemed the fault of plaintiff. However, as we appreciate the evidence, these defects could have been corrected, and Cooper & Sperier were willing to correct them. In these circumstances we fail to find that Cooper & Sperier were in default. The trial judge, it may be said, reached the same conclusion.

Cooper & Sperier not having breached the contract and, therefore, not having been properly in default, plaintiff had no right to terminate the contract at their expense. It is true, she had a right to cancel at pleasure the building contract she had made, even though the work had already been commenced, but in doing so she was called upon to pay the contractors for the expenses they had incurred and such damages as the nature of the case required, for article 2765 of the Civil Code provides that:

"The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require."

In Dugue v. Levy, 114 La. 21, 37 So. 995, it was held that this article means that, while the proprietor is entitled to cancel the contract, the contractor, barring remote and consequential losses, such as the loss of reputation and the loss of profits on other business, is entitled to be placed in the same position he would have been in, had he been permitted to complete the contract.

Cooper & Sperier are entitled, under their reconventional demand, to the benefits of the foregoing codal article. The trial court allowed Cooper & Sperier, as the cost of the work done by them, $8,895, subject to a credit of $2,940, the amount of a payment received by them. This is the cost of the work done, as estimated by Bartholomew, and corroborated substantially by the evidence of Cooper. Cooper & Sperier have asked that this allowance be affirmed. In our view it should be affirmed.

As relates to the demand made by plaintiff for the money in the hands of the Security Building & Loan Association, borrowed by her, it may be said that, at the close of the evidence in this case, an agreement was entered into, without admitting that any of the parties to this suit were in default, but saving their rights so far as relates to this litigation, by which plaintiff was enabled to complete the contract through another contractor. This agreement gave rise to another case, bearing the same title, but which is not pertinent here, namely, Wickliffe v. Cooper & Sperier, 161 La. 417, 108 So. 791. Under that agreement the Security Building & Loan Association has paid for plaintiff's

benefit to the new contractor the money claimed, except the $2,940, mentioned above, which was correctly paid plaintiff before the institution of the present suit. Hence there is no reason to allow this demand.

 As relates to plaintiff's demand against Cooper & Sperier's surety for the cancellation of liens, as we appreciate it, all liens have been erased arising out of Cooper & Sperier's contract, save possibly such as may be in favor of Cooper & Sperier themselves, which plaintiff is not entitled to have canceled.

For the reasons assigned, the judgment appealed from is affirmed.

THOMPSON, J., dissents.

O'NIELL, C. J., dissents on the ground that a considerable part of the work was not done according to contract.