McCALEB, Justice.
During the early part of October 1945, Libbey-Owens-Ford Glass Company, acting through its agent, Stone & Webster Engineering Corporation, entered into negotiations with plaintiff, an excavating contractor, for the rental of a Koehring Drag Line and a T-20 C.H.B. Bulldozer to be used in connection with the construction of additions to its plant in Caddo Parish. As a result, a contract was made in the form of a written purchase order, dated October 20, 1945, addressed by Stone & Webster to plaintiff, under which the latter .agreed to furnish the following:
“1 — 1 yd. Crane and Drag Line fully operated for approximately 480 hours at $8.50 per hr. 1 — T. 20 C.H.B. -Bulldozer fully operated for approximately 480 hours at 5.50 per hr. Total Price this Order — $6,720.00.” Approximately Net $4,080.00 2,640.00
On or about October 15th, five days before the purchase order was executed, plaintiff moved his equipment to the site and began the excavation operations. During the progress of the job, difficulties were encountered with the local labor union and Libbey-Owens-Ford, evidently to bring about harmony, demanded that plaintiff supplant his colored union operators with white operators, to which plaintiff acceded. Thereafter, the work continued until January 9, 1946 when plaintiff was ordered by Stone & Webster, as agent for LibbeyOwens-Ford, to cease operations and remove his equipment from the job. On that date, the dragline had worked 340 hours and the bulldozer 148 hours, for which plaintiff had been paid in accordance with the contract price.
Contending that his equipment had been rented for not less than 480 hours and that Libbey-Owens-Ford and its agent, Stone & Webster, breached the contract by cancelling it prior to the completion of the lease period, plaintiff brought this suit to recover damages. He averred that, had defendants used the machines for the stipulated time, he would have made a profit of $5 per hour for 140 hours on the- dragline ($700), and $3 per hour for 332 hours.on the bulldozer ($996), or a total of $1696. In addition, he claimed $3530.95, representing damages allegedly sustained by his equipment as a result of defendants’ act *1095 in forcing him to use inexperienced white operators on the job.
Stone & Webster was dismissed, in limine, by way of exception on the ground that it was admittedly acting as agent for a disclosed principal. Libbey-Owens-Ford strenuously resisted liability on numerous grounds but, after hearing the evidence, the judge found for plaintiff in the sum of $1696, representing the profit that he would have made on the contract but for defendant’s breach. The judge, however, refused to consider plaintiff’s demand for damages allegedy resulting from the forced employment of white union operators and this question has passed out of the case since plaintiff has not answered this appeal, which has been taken by LibbeyOwens-Ford.
Plaintiff’s suit is founded on Article 2765 of the Civil Code, which provides:
“The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require.”
This article has been many times construed and it has been held to authorize the recovery of profits which the contractor would have made if he had been allowed to complete the work. Dugue v. Levy, 114 La. 21, 37 So. 995 and Wickliffe v. Cooper & Sperier, 167 La. 689, 120 So. 52.
But defense counsel assert that Article 2765 is without pertinence as they conceive that the contract was for the rental of plaintiff’s equipment at a unit price per hour and, hence, not being for a definite term defendant had the right to terminate it at the end of any hour. Alternatively, it is maintained that, even though it be found that the agreement had a duration of 480 hours, the judge should not have awarded damages for the reason that plaintiff failed to prove his claim for loss of profits with any degree of certainty.
The first contention of defendant requires a consideration of the contract upon which the suit was brought. As aforesaid, this agreement is in the form of a purchase order made between plaintiff and defendant’s agent, Stone & Webster, whereby plaintiff agreed to furnish a fully operated dragline and bulldozer for approximately 480 hours at a price of $8.50 per hour for the dragline and $5.50 per hour for the bulldozer, amounting to a total rental price of $6720 for the use of the equipment for the hours (480) contracted for.[1] *1097 To say that this is an agreement for an indefinite period, subject to termination at the end of any hour, is, we believe, to ignore the understanding expressed by the parties in fairly comprehensible language. The only uncertainty concerning the term of the contract results from the use of the word “approximately” in connection with 480 hours in providing the time for which the equipment is leased. But a reading of the purchase order readily discloses that this lack of exact specification of the term of the lease relates only to the time over and beyond 480 hours that the equipment was to be used by defendant — for the order states a total of $6720 as the rental price for the equipment, making it clear that it was intended that defendant was to use the equipment for at least 480 hours. And, if a further explanation were essential, the parol evidence submitted by plaintiff, which is not contradicted by defendant, exhibits that it was represented to him that the job would last for about six months and that the 480 hours stated in the purchase order was, in the words of Stone & Webster’s representative, “just a matter of form * * When that plays out we will issue another. That is customary”.
Counsel for defendant further say that we must, perforce, construe the contract to be for an indefinite term and as a rental by the hour because, otherwise, this agreement would be illegal as it would be violative of the maximum price regulations of the Office of Price Administration (see 10 Fed.Reg. 597 and 8854) which were in effect at the time the contract was made.
There is no substance in the proposition. In the first place, counsel do not claim that the rental price of the equipment exceeded the maximum permitted by MPR 134 but only that the price should have been calculated on the monthly rate basis instead of the hourly basis. If this be true, the ¡violation would be merely technical and could not, in any case, pervert the agreement. Moreover, it occurs to us that, even though the price exceeded that permitted by OPA, the validity of the contract would be unaffected; the violation would render the lessor liable to the lesee for the overcharge, plus penalties, but this would not nullify the obligation.
Being in accord with the view of the district judge that the contract had a duraion of not less than 480 hours, it follows that liability ensues for whatever damage plaintiff has sustained, as defendant admits that plaintiff was ordered to discontinue work before the completion of the time contracted for. And the parties have stipulated that, at the time plaintiff was ordered to stop work, he had completed 340 hours *1099 with the dragline and 148 hours with the bulldozer. He is claiming a loss of profit of $5 per hour for the unfinished 140 hours on the dragline and $3 per hour for the unfinished 332 hours on the bulldozer.
Defendant controverts the allowance of the claimed profits maintaining that the proof submitted by plaintiff is too vague and uncertain to support a judgment.
Plaintiff testified that the hourly expense for operating the dragline amounted to a total of $2.65 per hour, which was made up of the following figures: $1.55, operators’ wages; 30$ oil and grease; 80$ miscellaneous expense, repairs, etc. This sum, when deducted from the contract price of $8.50, leaves a balance of $5.85 so that the claim of $5 per hour profit seems reasonable and fairly accurate. The same may be said of the claim of $3 per hour profit on the rental of the bulldozer. Plaintiff’s evidence shows that the operator’s scale amounted to $1.37% per hour with fuel, grease and other miscellaneous items, at the outside, totaling $2.50 per hour. The contract specifies an hourly rental rate of $5.50, thus leaving a profit, after deducting the $2.50 hourly expense, of $3.
Plaintiff’s testimony is corroborated by the evidence of two other contractors, who have been engaged in excavating work with draglines and bulldozers for many years. The tenor of their statements is that it is reasonable to expect profits of $5 per hour on a dragline and $3.50 per hour on a bulldozer where the hourly rental rates are $8.50 and $5.50, respectively.
Defendant did not produce any evidence to contradict the testimony of plaintiff and his witnesses. However, counsel argue that the evidence is too speculative to warrant a judgment and they point to their cross-examination of plaintiff, wherein he confessed that he had not made appreciable profits out of the contract up to the time defendant dispensed with his services and his admission that the profit he was claiming was based entirely on estimates.
Plaintiff’s admitted meagre profits on the job resulted from several breakdowns of his machinery which he maintains were due solely to the careless handling of his equipment by the white union operators forced on him by defendant. But his past experience is not to be regarded as a fair criterion in establishing the profits he would have made but for defendant’s breach of contract — for the unusual repairs had already occurred and there is no reason to presume that they would continue in the future. When we consider his evidence as a whole, we have no hesitancy in coinciding with the trial judge that the damages claimed have been amply established.
The cases cited by defense counsel to the effect that speculative profits will not be allowed are not appropriate here because we think that plaintiff has proved his damage with reasonable certainty. He was not required to establish his claim with exactitude or beyond any doubt but *1101 only to make it fairly certain. This he did to the satisfaction of the trial judge and we see no reason to disturb the ruling.
The judgment is affirmed.

. We note that defendant contends that the purchase order is not the final written contract between the parties. It maintains that the real contract is evidenced by a letter from Stone & Webster to plaintiff dated October 27, 1945, stating that it is in confirmation of a conversation had on October 20th regarding the rental of the equipment. In this letter, the hourly rates of rental are set forth unaccompanied by a provision that the equipment would he used for 480 hours or any other stipulated period.
*1097 This contention is erroneous for the reason that the formal purchase order executed by tbe parties refers to the letter of October 27th, stating “Price as per • your quotation dated October 27, 1945”. It is perfectly evident that either the date of the purchase order (October 20, 1945) is erroneous or that it was deliberately antedated to coincide with the time when the verbal understanding was confected.