399 So.2d 818 (1981)
T. E. LOFTON, Jr.
v.
DON J. TRAHAN, INC. and Don J. Trahan.
No. 14143.
Court of Appeal of Louisiana, First Circuit.
May 29, 1981.
*819 James C. Walker, Jr., Houma, for plaintiff and appellee.
Eddie N. Pullaro and Robert Cuccia, Houma, for defendants and appellants Don J. Trahan, Inc. and Don J. Trahan.
Maurice Mathieu, Houma, for third party defendants Vernon Hutchinson and Houma Sheet Metal, Inc.
Gerald F. Lofaso and Richard P. Mire, Houma, for third party defendant Chester Nixon.
Joseph J. Piccione, Lafayette, for third party defendant Lafayette Woodworks, Inc.
Jerry H. Schwab, Houma, for third party defendant Top's Woodwork & Supply, Inc.
Before COVINGTON, CHIASSON and LEAR, JJ.
LEAR, Judge.
This suit was filed alleging breach of a construction contract.
Plaintiff, T. E. Lofton, Jr., and defendant, Don J. Trahan, Inc., entered into a contract for construction of a residence in Terrebonne Parish, Louisiana. The contract set the approximate cost of the building at $113,200.00, including defendant's commission. After completion of the building, plaintiff signed an acceptance of the contract or performance except for some twenty-two alleged defects. By letter, some month and a half later, plaintiff informed defendant of some twelve defects which had not been corrected.
Plaintiff alleges that the commission to defendant was for procuring and supervising laborers, subcontractors and suppliers of materials, including payment of sums due for work and supplies.
Plaintiff also sues Don J. Trahan individually, alleging that certain sums advanced to this defendant for payment of materials were misused by defendant, resulting in materialman's liens being filed against plaintiff's property. Plaintiff seeks judgment for $25,750.00 for unearned commission and defects in workmanship and materials plus $10,000.00 for damage to plaintiff's credit and reputation. Defendant answered the petition by a general denial and reconventional demand, seeking judgment for $8,938.16 for funds still due under the contract.
Defendant further filed a third party demand against eight subcontractors for judgment in the amount of any judgment which may be cast against defendant and in favor of the original plaintiff.
After several days of trial, the court rendered judgment in favor of plaintiff and against defendants in the sum of $8,855.00 and further authorized plaintiff to withhold the sum of $7,801.76 representing the amount of the two liens filed against plaintiff's property. Judgment on the reconventional demand was in favor of plaintiff in reconvention and against T. E. Lofton, Jr. in the sum of $8,002.10. All third party demands were disposed of either during the trial by exceptions or in the judgment after trial in favor of the subcontractors.
*820 The trial court, in a lengthy and well reasoned opinion, which we adopt in part, held as follows:
"The defense of this lawsuit by defendant is twofold. First, defendant contends that the contract entered into by the defendant corporation and plaintiff is a cost plus contract and as such any defects in workmanship or materials are the responsibility of plaintiff unless the contrary has been stipulated to in the contract. A copy of the contract agreement is filed in the record and it is clear from a reading thereof that there is nothing in the contract stipulating who will be responsible for the cost of correcting defects in workmanship or materials. Defendants cite several cases which hold that while some mistakes will be made in construction work, the cost of correcting the mistakes is properly included in the amount to be paid to the contractor on a cost plus job. (See Schroeter v. O'Steen, 94 So.2d 556 (2nd [Cir.] [La.App.] 1957), Pennington v. Campanella, 180 So.2d 882 (1st [Cir.] [La.App.] 1965), Delta Paving Company v. Woolridge, 209 So.2d 581 (4th [Cir.] [La.App.] 1967). That is to say, the owner must bear the expenses of correcting the mistakes made in construction on a cost plus contract, unless it has been agreed to differently in the contract.
"The court recognizes that to be the law of this state and would apply it in this case except for the fact that a stipulation was entered into during the trial which the court understands to mean that the responsibility for the satisfactory performance of the contract rests on the contractor and not the owner. The transcript shows that on pages 218 through 221 it was stipulated by the parties that the defendant would be entitled to the sum of $8,002.00 but only in the event that this court finds that the residence has been constructed satisfactorily. The court will state at this time that in its opinion the residence was not constructed satisfactorily in that there were several defects amounting to and costing several thousands of dollars to remedy. Therefore, the court is of the opinion that while this contract, when it was entered into, was a cost plus contract, by virtue of the stipulation it was the intent of the parties that Mr. Trahan would be responsible for the satisfactory construction of this residence and that he would be responsible for whatever defects occurred in carrying out and performing the agreement between the parties. By stipulating that there would be $8,002.00 due and owning him, he was also stipulating that it was his responsibility to perform the job satisfactorily. The stipulation in essence placed the responsibility for performing the job satisfactorily, which included the correction of defects, squarely upon the shoulders of the contractor and not upon the owner. Therefore, the court cannot apply the ruling of law announced by the appellate courts in the cases cited by defendants.
"The second line of defense by defendants is that since Mr. Lofton has accepted and taken possession of the premises as being substantially complete that said acceptance of the residence in its then present condition voided any claim by Mr. Lofton for breach of contract. The court admits that there was an acceptance of the residence by Mr. Lofton as being substantially completed, but the acceptance was conditional and qualified in that there was attached to the acceptance a punch list of mistakes and defects that Mr. Lofton felt should be corrected by the contractor. The court agrees. Because the acceptance was conditional and qualified by Mr. Lofton, the court feels that this defense raised by defendants cannot prevail. Defendant corporation, in the opinion of this court, was still obligated and required by its agreement with Mr. Lofton to complete the house satisfactorily. Said corporation was legally responsible to correct the mistakes set out in the punch list attached to the acceptance, and its failure to do so constitutes a failure and breach of the agreement with plaintiff.
"For the above stated reasons the court has concluded that neither defense raised by defendants can prevail. Defendant corporation is liable for any defects in the construction of this residence and whatever sums of money are required to correct the mistakes is the responsibility of said corporation.

*821 QUANTUM
"The court made a personal visit to the residence, accompanied by the attorneys and parties, and made a visual inspection of the areas of complaint that are in dispute in this lawsuit. The court will consider each item separately.

DRIVEWAY
"An examination of the driveway convinces the court that there were serious defects existing in the slab and that it appeared to be in a condition of deterioration. Testimony by an expert in the field of architecture, Mr. Eugene L. Rizzo, and Mr. Jarrett Maynard, a construction expert, further convinced the court that the driveway was defective and in a condition that the only satisfactory solution would be a total replacement thereof. The court further believes and observes that one of the causes of the defective driveway was the condition of the soil when the concrete was poured. Testimony established that weather conditions at the time had caused the ground to become very wet, and apparently was in no condition to receive concrete when it was poured. Furthermore, there was testimony indicating that there was insufficient cement and that said inadequate cement mix did not provide for a quality of concrete that was needed for the type of use that the slab would be subjected to. In other words, it was a poor mix with an inadequate amount of cement and together with the wet soil conditions caused the breaking and the deterioration of the concrete slab necessitating that it be replaced entirely. The architect estimated that it would cost $6,360.00 to make a total replacement of the driveway, and the court has concluded only replacement to be a satisfactory solution to this problem.

BREEZEWAY
"The court will not allow any recovery for the alleged defects in the breezeway. The court examined the breezeway and was also informed that Mrs. Lofton had accompanied the defendant, Mr. Trahan, to a neighbor's home where Mrs. Lofton pointed out a driveway as an example of the materials and results which she wanted in this breezeway. The court visited that neighbor's driveway and examined it after examining the breezeway of plaintiff's home. The court is of the opinion and has concluded that there is very little difference between the surface of those two slabs. The construction and surface of the breezeway are almost identical to the driveway of the neighbor's home which Mrs. Lofton used to demonstrate for the contractor what she wanted him to build for her as her breezeway. The court is satisfied that there are no defects in the breezeway and that the contractor has fully complied with his contractual obligations insofar as the breezeway is concerned and recovery of that item will be denied.

ROOF FLASHINGS AND VALLEYS
"The court believes that painting of the valleys and flashings in their present condition would correct any problem that may exist in these items. Plaintiff insists on a change in the flashings and valleys from galvanize to copper. Plaintiff did not pay for, nor should he receive, copper flashings and valleys. He paid for galvanize and he received galvanize. The significance between copper and galvanize is that copper is much more expensive than galvanize, and defendant should not be required to furnish any different material or more expensive material than it was paid for by plaintiff. Therefore, the court believes that plaintiff should recover the cost of painting the valleys and flashings as they presently exist, which has been estimated by Mr. Vernon Hutchinson to be in the amount of $145.00.

SHEETROCK
"The court examined the sheetrock defects in the living room, hall and bathroom and concluded that either the workmanship or materials was defective. These walls must be replaced. The architect, Mr. Rizzo, estimated that to correct the sheetrock would be approximately in the sum of $750.00 which the court will award to plaintiff for these defects.

*822 PAINTING AND CLEANING OF BRICK
"The architect pointed out to the court that certain areas of the house were not painted. These areas were in the breezeway and the front porch of the home and steel lintels on the windows were not painted at all nor were they back primed. Mr. Rizzo also found that brick around the outside of the house needed cleaning as well as around the fireplace. He testified that the cost involved in these matters would be painting the exterior of the house in the amount of $800.00 and cleaning the bricks around the fireplace in the amount of $500.00, for a total of $1,300.00. Plaintiff will be allowed recovery for the cost of these repairs.

DOORS
"An examination of the doors revealed that some of the frames were not properly [plumbed], causing the doors not to close correctly, and it was also evident that the tops and bottoms of the doors had not been painted. Mr. Louis Bordelon, a representative of Lafayette Woodworks, Inc., testified that he found that the doors in the master bedroom and the master bath had not been properly hung, that the French doors in the master bedroom were not painted either on the top or bottom, and that there were other problems with the doors caused by improper installation. He was of the opinion that some of the doors would have to be replaced and other corrective work done in order to satisfactorily remedy the defects in the installation of the doors. The architect, Mr. Rizzo, also found that the interior doors needed to be painted on both sides and that the exterior doors had warping and peeling veneer. Mr. Jarrett Maynard testified that the cost of the work to be done on the doors would be approximately $300.00.

LACK OF SUPERVISION
"Plaintiff seeks the return of $10,750.00 claiming that that sum is unearned commission. The court disagrees and will not allow that sum to be awarded to plaintiff. Other than the defects that have been described in these reasons for judgment, the residence appeared to be well constructed and upon correction of the defects itemized hereinabove, the court is of the opinion that afterwards the residence will have been satisfactorily completed and that the contract would have been fulfilled in its entirety. That being so, the court is of the opinion that the defendant will have earned and is entitled to the balance of the commission which in this case would be the sum of $8,002.00 due and unpaid.

FAILURE TO PAY SUPPLIERS
"The court agrees that plaintiff paid to Mr. Trahan a sum sufficient to cover the bills from Perque's Floor Covering, Inc. and Arceneaux Air Conditioning but that Mr. Trahan did not pay those two bills resulting in the subcontractors filing liens against Mr. Lofton's property. Because of this failure by Mr. Trahan to pay Perque's Floor Covering, Inc. and Arceneaux Air Conditioning and because he converted this money intended as payment of those bills to Mr. Trahan's commission, the court feels that he has made himself personally liable for the claims involved herein. The court believes that since these two liens have not been paid that plaintiff should be allowed to withhold a sufficient sum to pay those liens in the event the defendant does not do so. Therefore, while defendant is entitled to a judgment for the balance of the contract, that is $8,002.00, which has been admitted as being the unpaid balance due and owing, plaintiff may withhold from said sum the sum of $7,801.76, representing the amounts of the liens, and cost, until such time as those two liens have been paid and cancelled from the official records of Terrebonne Parish.
"Plaintiff also seeks the sum of $10,000.00 as damages to his reputation and credit. There has been no evidence introduced in this record to establish that Mr. Lofton suffered any damages to his reputation or to his ability to obtain credit. The burden of proof to establish these losses is upon Mr. Lofton, and absence any evidence or proof on these two claims, the court must deny him relief therefor. The court will deny *823 recovery for an alleged loss of credit and reputation.
"There is a stipulation in the record that Quality Title Company, Top's Woodwork and Supply, Inc., Vernon Hutchinson and Houma Sheet Metal Works, Inc. would be dismissed from the lawsuit, and accordingly, judgment will be rendered dismissing those third party defendants from this lawsuit, with prejudice.
"Additionally, the court will dismiss the third party demand against Chester Nixon, with prejudice, the court finding as a fact that Mr. Nixon was not at fault or negligent in the performance of his subcontract. The fault and negligence involving the driveway was caused by defendants as hereinabove explained."
For the above reasons, the judgment of the trial court is affirmed, defendants to pay all costs.
AFFIRMED.