192 So.2d 179 (1966)
R. J. DUCOTE CONTRACTOR, INC.
v.
L. H. BOSSIER, INC., et al.
No. 6784.
Court of Appeal of Louisiana, First Circuit.
November 21, 1966.
*180 Richard B. Sadler, Jr., of Provosty, Sadler & Scott, McSween & McSween, Alexandria, for appellant.
Charles Wm. Roberts, of Burton, Roberts & Ward, Baton Rouge, for appellees.
Before LANDRY, ELLIS and BAILES, JJ.
LANDRY, Judge.
Defendant L. H. Bossier, Inc. (Bossier) and its surety, National Surety Corporation (National), have taken this appeal from the judgment of the trial court awarding plaintiff R. J. Ducote Contractor, Inc. (Ducote) judgment in the sum of $9,060.01 (less a credit hereinafter indicated) for alleged breach of a contract wherein Ducote subcontracted to perform all dirt work required in the construction of a state highway project on which Bossier was prime contractor. The trial court also awarded appellee legal interest on the amount of the judgment from March 21, 1961, until paid, together with 10% additional as attorney's fees pursuant to LSA-R.S. 38:2246, appellee having duly filed a lien against the project in question.
We find the judgment of the trial court must be amended to allow appellants credit in the further sum of $2,500.00 as will hereinafter appear.
The agreement between Bossier and Ducote was verbal which circumstance was the primary cause of this litigation. The precise issue before the court is the difference of opinion between the parties regarding the manner in which Ducote was to be paid for work performed under the subcontract.
All parties concerned agree that payments to Bossier under the prime contract, which was to build a by-pass on U. S. Highway 165 pursuant to agreement with the Department of Highways of the State of Louisiana (Department), were to be based and made upon monthly estimates of items completed. It is also conceded that the estimates were to be made by the project engineer employed by the State, in this case, Walter Reese Overton (Overton). Both appellants and appellee likewise acknowledge that the estimates, according to custom in the trade, were made on or about the 20th or 21st of each month and reflected all project items completed since the last preceding estimate.
*181 Appellee contends the terms of the subcontract provided that Ducote would be paid the agreed subcontract unit prices on all work performed based upon the monthly estimates of the project engineer, irrespective of whether the work was in fact satisfactorily completed and formally accepted by the Department at the time of each such estimate. Appellants contend, however, that appellee was to be paid only upon satisfactory completion and acceptance by the Department of each contract item regardless of the monthly estimates approved by the project engineer and the sums paid thereunder to the prime contractor. Additionally, appellants aver the work performed by appellee pursuant to item four (hereinafter discussed in some detail) was incomplete and improperly executed. On this ground appellants filed a reconventional demand seeking judgment against appellee in the sum of $6,865.59. Said reconventional demand is founded on the premise that Bossier finished the work at a cost of $13,454.16 and has a further claim against Ducote in the admitted sum of $2,471.44, which total claim is entitled to a credit of $9,060.01, said latter sum being the amount to which Ducote was entitled had he finished the work according to the agreement.
The contract between Bossier and the Department is dated March 30, 1960. Subsequently, on July 31, 1960, the verbal subcontract was confected between Bossier and Ducote. It is conceded that as the work progressed Bossier received four stage payments from the Department predicated upon monthly estimates submitted by Overton. As each of the four payments were received by Bossier, said appellant in turn paid Ducote the unit subcontract price of such estimates in stage payments in similar fashion. It is acknowledged that the fourth and last payment made to Ducote by Bossier was on December 14, 1960, for work performed by Ducote as per the estimate of the project engineer made November 25, 1960. Thereafter a statement was presented to Bossier by Ducote under date of December 16, 1960, covering work performed subsequent to November 25, 1960, in the sum of $9,060.01. For all practical purposes the aforesaid statement may be considered a request by Ducote for payment of item 5 under the subcontract. Although Bossier received payment of item number 5 from the Department in January, 1961, Bossier nevertheless declined to pay Ducote the amount due under said item contending that certain work done by Ducote and previously paid for under item 4 had been rejected by the project engineer as unsatisfactory. On this basis Bossier contended it was justified in withholding further payments to Ducote until item 4 was satisfactorily completed. Appellee took the position that Bossier's refusal to pay constituted an active breach of the contract which required payment to appellee pursuant to the estimates of the project engineer and on this ground refused further performance.
Appellants' primary contention is that the trial court erred in concluding the terms of the verbal subcontract provided that Ducote be paid on the basis of the monthly estimates of the project engineer rather than on the basis of completed and accepted items of work.
The contract in question being verbal in nature, its terms can only be established by parol evidence. As is to be expected, the testimony of appellant and appellee on this vital issues is in conflict. In substance Ducote and his witnesses testified that in accordance with custom in the industry, it is usual for the subcontractor on such a project to be paid his bid unit price based on the monthly estimates of the project engineer, which arrangement was in fact agreed to by the parties in the present case. The witnesses summoned by appellant Bossier, however, denied the arrangement contended for by appellee and averred the parties agreed that appellee would be paid only upon completion and acceptance by the Department of each item for which the *182 subcontractor submitted a statement for payment.
The only disinterested witness to testify concerning this crucial issue was Overton. While his testimony does not expressly confirm or corroborate that of appellee, nevertheless we discern therefrom the clear impression that, as contended by appellee, it is customary in the industry that a subcontractor be paid on the basis of monthly estimates submitted by the project engineer on work of this nature. We conclude, therefore, as did our colleague below, the evidence preponderates in favor of the contention of appellee regarding the terms of the verbal subcontract insofar as they relate to the method of payment to Ducote.
Counsel for appellants contends that permitting the decision of the lower court to stand in favor of appellee will have an undesirable and unwholesome effect upon the road construction industry in this state inasmuch as it gives a subcontractor the same legal relationship with the owner of the project as is enjoyed by the prime contractor. In this connection, counsel also argues that the effect of the decision of the trial court is to require payment to the subcontractor without consideration and against such eventuality the prime contractor has no protection because customarily subcontractors are not required to furnish performance bonds.
It is settled law that so long as the terms of an agreement contravene no prohibitory law and are not contra bonos mores, neither the wisdom nor effect thereof is any concern of the courts. Such contracts will be enforced by the courts according to their terms irrespective of the results upon either party thereto. Bill Garrett Leasing, Inc. v. General Lumber & Sup. Co., La.App., 164 So.2d 364.
We see nothing in the subcontract as found to exist herein contrary to either express law or good morals. The parties having voluntarily agreed upon the terms hereinabove indicated, the court must enforce the contract according to their mutual understanding. Having actively breached the agreement by refusing to pay upon the monthly estimates of the project engineer, Bossier thereupon became in default and justified Ducote's refusal to continue performance on his part. Counsel for appellant has cited numerous cases as well as LSA-C.C. Articles 2765 and 2769 regarding the right of a proprietor to cancel a contract where the undertaker fails or refuses to perform as agreed. We are in accord with the law cited by counsel but find it inapposite to the case at bar considering that here it is the proprietor (Bossier) who first actively breached the contract thereby vesting in Ducote the right of cancellation.
We find no merit in the contention that the decision in effect confers upon the subcontractor a relationship with the owner not contemplated by law and places contractors in an untenable position because it is customary in the trade not to require performance bonds of subcontractors. The wisdom of such practice addresses itself to the discretion of individuals and concerns engaged in the trade. The law permits contractors so engaged to require performancebonds from those to whom portions of the contract work is sublet. If contractors in the road construction field see fit to dispense their subcontractors from furnishing performance bonds, the risks attendant upon such election are deemed apparent to those concerned.
All parties concede the amount due-Ducote under the unpaid estimate submitted to Bossier under date of December 16, 1960, is $9,060.01.
It appears the work to be performed by Ducote consisted of "common excavation" or "undercut" which is shown by the evidence to mean earth dug within the highway right of way and used in the construction process and also "borrow" which connotes dirt dug outside the right of way and hauled to and incorporated in the roadway *183 as "fill". Item 4 (for which Ducote was paid in full) consisted of both common excavation and borrow.
While there is some confusion in the testimony of the various witnesses regarding whether the borrow included in item 4 was properly performed by Ducote, the testimony of the Project engineer, Overton, removes all doubt as to this issue. Overton's evidence is clearly to the effect that all borrow included in item 4 was fully and completely acceptable to the Department.
It is uncontradicted that on or about December 19, 1960, the project was closed for the winter due to inclement weather which made impossible the handling of dirt. At this time there were approximately 20,000 yards of undercut stockpiled on the project right of way by Ducote as part of item 4 for which both Ducote and Bossier had been paid in full. It appears the aforesaid stockpiled undercut was initially intended to be incorporated into the roadbed of the project. At that time, however, the material was so wet it was considered "muck" incapable of utilization as highway roadbed material. For this reason the Department decided the undercut on hand would be permitted to remain on the right of way until it dried out and became capable of being worked into the project.
Appellee concedes its obligation to process the stockpiled undercut and incorporate it into the project in accordance with the project plans and specifications and subsequent change orders of the project engineer. Appellants contend that after Ducote walked off the job it became incumbent upon Bossier to process or work the under cut into the roadway in the spring of 1961, which Bossier did at a total cost of $13,454.16.
The record, however, reveals the following undisputed testimony of the project engineer Overton which we believe to be decisive of the issue as found by the trial court: In substance Overton stated that prior to closing the job in December, Ducote had correctly processed and worked approximately 2500 yards of the stockpiled undercut into the project as contemplated by the plan and specification. He, Overton, informed Ducote the condition of the remaining undercut was unsatisfactory and that the material would have to be reprocessed, reworked and disposed of in accordance with contract specifications at a subsequent date. While Bossier's testimony is to the effect the stockpiled undercut was a virtual total loss in that it contained foreign material which necessitated considerable extra processing, this charge is refuted by Overton's evidence. In this connection Overton testified the stockpiled undercut was initially intended for use in the roadbed proper but subsequent change orders authorized its use months later as embankment and shoulder material upon the ultimate conclusion the undercut was unsuitable for placement in the roadbed. Overton further testified that to utilize the undercut as embankment or shoulder fill it was only necessary that it be spread with a bulldozer which could have been accomplished for approximately $2,500.00. To replace the material thus used for other than roadbed construction, a change order for a similar amount of borrow was subsequently issued for which change appellant was paid in full.
We find therefore that to complete the work for which appellee was responsible, the aforesaid undercut required processing or handling entailing a cost of $2,500.00. Appellee is, under the circumstances, entitled to be paid for the uncompensated work actually performed. See Arendsen v. Edw. D. Boyle & Co., 9 La.App. 367, 119 So. 282. The sum required to complete the work, however, must be charged to appellee, otherwise appellee would receive remuneration for work not actually performed.
A stipulation of record indicates appellee concedes indebtedness to Bossier in the sum of $2,471.44, credit for which must also be allowed appellants herein.
*184 We note also that the judgment of the trial court inadvertently allowed appellee legal interest on the amount of the judgment from March 21, 1961, whereas the record reveals suit was filed January 23, 1963.
The trial court in permitting plaintiff the full amount of his claim, awarded him 10% of said sum as attorney fees pursuant to LSA-R.S. 38:2246. In reducing this judgment to an amount less than that claimed, this court must at the same time eliminate attorney fees as a part of the judgment. It is well established in our jurisprudence that where any claimant recovers the full amount of his recorded or sworn claim under LSA-R.S. 38:2246, he is entitled to attorney fees as penalty, but where the claim is debatable and, as in this case, not fully recoverable, the attorney fees may not be imposed upon the other party. See Louisiana Highway Commission v. McCain, 1941, 197 La. 359, 1 So.2d 545; Goldberg v. Banta Bros., 1935, 183 La. 10, 162 So. 786; Long Bell Lumber Co. v. S. D. Carr Const. Co., 1931, 172 La. 182, 133 So. 438; Normand Co. v. Abraham, 1965, La.App., 176 So.2d 178.
For the reasons assigned, the judgment of the trial court is amended and judgment rendered herein as follows: It is ordered, adjudged and decreed that there be judgment in favor of R. J. Ducote Contractor, Inc. and against L. H. Bossier, Inc. and the National Surety Corporation, in solido, in the sum of $9,060.01; less a credit of $2,471.44, as stipulated by the parties; and less an additional credit of $2,500.00, representing the expense incurred by L. H. Bossier, Inc. in performing plaintiff's incompleted work; plus interest from date of judicial demand. All costs of this appeal shall be borne by R. J. Ducote Contractor, Inc.; all other costs shall be borne by defendants, L. H. Bossier, Inc. and the National Surety Corporation.
Amended and affirmed.