JASPER E. JONES, Judge.
On January 24, 1979, Don E. Giddens, d/b/a Giddens Erection Company, sued Alpine Construction Specialties, Inc. for sums alleged to be due on five construction contracts executed between plaintiff and defendant in 1978. Defendant is a general contractor engaged in the business of constructing prefabricated metal buildings. Plaintiff, an erector of prefabricated metal buildings, entered into a series of contracts with defendant whereupon he agreed to erect at various locations prefabricated metal buildings for defendant. The contracts required plaintiff to supply the labor and tools to perform the erection work and required defendant to provide the prefabricated materials for the construction of the buildings and to prepare the foundations upon which the buildings were to be erected.
Plaintiff erected the metal buildings covered by four of the contracts sued upon. Included within the sums he demanded was approximately 10% of the contract price of these four contracts which had been retained by defendant and not paid to plaintiff. Also included in the amount sued upon was extra labor cost and other expenses incurred by plaintiff which were made necessary by requirements made by defendant in connection with the performance of the erection work on two of the contracts, designated as Al’s Car Care Center and Schlumberger Shreveport Learning Center, which were not contemplated or provided for by the contracts. Also included within the amount sued upon was a discount that had been allowed in the contract price on the Learning Center, which had been conditioned upon defendant permitting plaintiff to construct it alongside of and simultaneous with another building designated as Schlumberger Cased Hole Facility. The defendant required the two Schlumberger buildings to be constructed at separate locations and at different times and was therefore not to be entitled to the discount.
*1028 Also included in the sums sued for was the contract price for one building designated as the Scogins job which defendant did not call upon plaintiff to construct and which defendant had erected by another subcontractor.
Defendant answered and admitted owning substantially the amount claimed as re-tainage under the four contracts under which plaintiff constructed the buildings but denied owing any sum on the Scogins building which was not erected by defendant and denied the amounts claimed as extra labor costs and other expense incurred in connection with the erection of the buildings. Defendant claimed that the buildings erected under the four contracts sued upon contained defects which defendant was required to remedy and it reconvened against plaintiff for the expenses incurred in remedying these alleged defects. Defendant also reconvened for replacement costs of some prefabricated parts on the Schlumber-ger Learning Center which were incurred because plaintiff permitted these parts first supplied to become damaged during construction.
Defendant also sought in its reconven-tional demand a loss sustained by it because plaintiff did not perform a contract to erect the building known as Schlumberger Cased Hole Facility. Plaintiff and defendant had executed a contract covering the erection of this building on March 30, 1978 for a price of $12,019. This contract, as did all other contracts between plaintiff and defendant, required plaintiff to supply defendant with a certificate of insurance reflecting workmen’s compensation and liability insurance coverage. Plaintiff had initially supplied defendant with the required certificates of insurance provided by Montgomery Agency, but this certificate of insurance had been cancelled effective December 18, 1978, and though plaintiff had secured the required coverage with another agency plaintiff had not provided the new certificate of insurance to defendant. Defendant had demanded a new insurance certificate and advised plaintiff that if it wasn’t supplied, any outstanding contracts would be relet and that any additional costs incurred as result of being required to secure another erector to construct the buildings would be charged to plaintiff. After plaintiff instituted his suit defendant re-let the Schlumberger Cased Hole building to Mitchell, another erector, on February 2, 1978 for $18,952, and asserted in its reconventional demand a claim for the difference between the $12,-019 which plaintiff had agreed to erect the building for and the amount which it was required to pay Mitchell to get the building erected.
The trial court awarded plaintiff judgment for $6,238.24 which included the sum of $2,663.74 retained by defendant from the contract price of the four contracts under which plaintiff had erected the buildings. The trial court also awarded plaintiff the discount of $640 on the Schlumberger Learning Center contract which defendant was not entitled to because the two Schlum-berger buildings were not built at the same time and at the same location. Included in the award was $270 which the trial court found to be the profit which plaintiff would have earned from the contract to erect the Scogins building that defendant had failed to permit plaintiff to erect. Also included in the award was $1,000 for extra labor and expenses incurred by plaintiff in erecting Al’s Car Care Center and $1,100 extra labor expenses incurred by plaintiff in erection of the Schlumberger Learning Center building. These sums awarded for the extra expense were $2,500 less than plaintiff had demanded.
Defendant was awarded on its reconven-tional demand the sum of $1,579.19. This included the cost of replacing damaged building parts on the Schlumberger Learning Center building in the amount of $831.39. Defendant was awarded cost of repairing defects in Al’s Car Care Center building in the amount of $498.56 and the cost of repairing defects in the Cherokee building in the amount of $249.24. These awards for claims for repairing defects in these two jobs were substantially less than was demanded in the reconventional demand, and the demand for repairs of defects in the other buildings constructed by *1029 plaintiff was totally rejected. The claims asserted in the reconventional demand for the difference between what defendant was required to pay Mitchell for erecting the Schlumberger Cased Hole Facility and the price which plaintiff had agreed to erect it for was rejected. After defendant asserted the claim on this contract plaintiff amended his petition and asserted a demand for the contract price on this building, and the trial court rejected plaintiff’s claim on this contract.
Defendant appealed the judgment. It makes no complaint with regard to any of the elements of the awards against it except the amount of the award for extra labor of $1,100 on the Schlumberger contract and the award of $1,000 for extra labor on the Al’s Car Care Center contract.[1] It contends the trial judge erred in awarding these sums because the evidence did not establish the exact number of extra hours work that was performed to justify these awards and it seeks a reduction in the amount of the extra labor awards.
Defendant assigns no error with regard to the award it received for work performed correcting the defects in the buildings erected by plaintiff.
Defendant assigns as error the rejection of its claim for additional cost in the amount of $6,923 that it was required to pay Mitchell for erecting the Schulmberger Cased Hole building above the contract price which plaintiff had agreed to erect the building for.
There is substantial evidence in the record which establishes that plaintiff was required to spend extra labor cost because of changes in work schedule due to unwarranted delays created by defendant’s failure to provide some parts of the prefabricated buildings in the manner contemplated by the contract on the Schlumberger Learning Center. There is also substantial evidence that defendant failed to construct the slab upon which Al’s Car Care Center building was to be erected in the manner contemplated by the contract, and as a result of the slab defects, plaintiff was required to use additional labor to erect the building.
The trial judge recognized in his reasons for judgment that plaintiff had not established the amount of $4,600 claimed for this extra labor, but concluded that the evidence supported an award of $2,100 for this extra labor. While we agree that the evidence does not establish the exact amount of this extra labor, we find there is substantial evidence to support the trial judge’s conclusions and we do not find them clearly wrong and will not disturb the extra labor award on appeal.
Included in the trial judge’s excellent written reasons for judgment is the following statement with regard to his reasons for rejecting defendant’s demand for the extra cost incurred in obtaining the erection of the Schlumberger Cased Hole building:
“Alpine terminated this contract due to Giddens failure to provide the necessary certificates indicating that Giddens had the required insurance coverage. Alpine was notified by Montgomery Agency, Inc. that Giddens coverages would be terminated on December 18, 1978, due to nonpayment of premiums. Giddens obtained insurance coverage from Beasley-Keith Insurance Agency but both Don Giddens and Mrs. Lee admitted that proof of coverage was not given to Alpine. Mr. Gid-dens states that he was not going to do anything more until Alpine paid past due obligations.
An overview of the testimony of the parties in connection with this job indicates that the relations between Giddens and Alpine had deteriorated to the point that neither wanted to do business with the other. The termination of this contract was due to mutual fault and the Court is of the opinion that neither party is entitled to recover their claims arising out of P-3.”
*1030 Defendant contends that because the Schlumberger Cased Hole contract was a separate contract, the trial court was wrong to find that plaintiff was justified in refusing to perform the contract because of defendant’s breach of the five other contracts by failing to pay plaintiff the approximately $4,600 owed plaintiff by the terms of them. Plaintiff testified he didn’t supply Alpine with the new insurance certificates and refused to erect the Cased Hole building because the defendant did not pay him for the work already performed.
In the cases of Arendsen v. Edw. D. Boyle & Co., 119 So. 282 (Orl.Apl.1928); Rosenberger v. Hutchinson, 143 So.2d 604 (La.App. 4th Cir. 1962); and R. J. Ducote Contractor, Inc. v. L. H. Bossier, Inc., 192 So.2d 179 (La.App. 1st Cir. 1966), it was held that the failure of the general contractor to timely pay a subcontractor part payment as required by the contract justified the subcontractor in refusing to continue with the performance of the subcontract.
In the Arendsen, supra, case the general contractor failed to make payments for stone hauled by plaintiff, and plaintiff stopped hauling the stone and sued for the money due on those which he had hauled and for which he had not been paid. Defendant reconvened for the added cost he was required to pay to get the remainder of the stones hauled. The appellate court approved the trial court’s determination that the failure of the general contractor to pay plaintiff for the stone hauled:
“. . justified plaintiff in abandoning the contract and he is entitled to the pay for such work.” Id. at 283.
The court there rejected the defendant’s reconventional demand.
In the Rosenberger, supra, case, plaintiff had agreed to perform the carpentry work on defendant’s house for $3,512 which defendant agreed to pay in four installments as the work progressed. Each installment was due at designated stages in the progress of the construction work. Plaintiff received the first two installments, but defendant refused to pay the third installment which became due when the sheet rock was installed. When defendant refused to pay the third installment, plaintiff refused to complete the job because he did not have the funds to pay for the labor and material necessary to proceed with the work. The appellate court affirmed a judgment in favor of plaintiff for the third installment, stating:
“Since the plaintiff was not required to continue performance once the defendant refused to tender the third installment due for plaintiff’s work, plaintiff then was relieved of his obligation to complete the contract.” Id. at 606.
In the Ducote, supra, case, the court held that a dirt work subcontractor on a highway project was justified in refusing to continue performance of a subcontract because the general contractor refused to pay a progress payment found to be due under the contract.
In C & W Construction Co. v. Travelers Indemnity Co., 147 So.2d 706 (La.App. 1st Cir. 1962), a contractor and a subcontractor asserted claims against each other for damages alleged to be due as the result of a subcontract which was not performed by the subcontractor on a highway project. The court found that both parties failed to comply with the contract and neither was entitled to demand a penalty for its breach. The court quoted with approval from the trial judge’s reasons for judgment:
“My appreciation of the testimony in the record was that neither party was actually free from fault in connection with the work ceasing on this contract, and I consider this relatively important, because prior to the cessation of the work, both parties had failed to carry out their obligations under the contract, and neither of them can recover damages for the breach.” Id. at 710.
The trial court here was applying the rationale of the foregoing cases when it rejected Alpine’s demand based upon the failure of plaintiff to erect the Schlumber-ger Cased Hole building. We observe that all six of the contracts included in this litigation were executed in 1978. The principal obligation undertaken by plaintiff was *1031 to provide the labor to erect the buildings covered by the contracts. The total of the contract prices on the four contracts which plaintiff actually performed, and upon which most of his demand was based at the time he initially filed his suit on Jan. 24, 1979, was only $24,200. The evidence established plaintiff’s profit margin was only 15% indicating he could have expected to make only the sum of $3,430 from these contracts, and yet the trial court found defendant had withheld payment of approximately $4,500 on work performed above the amount awarded to defendant for correction of defects. The evidence further established that much of the money collected by plaintiff from defendant on these contracts was obtained only after numerous demands for payment, and by plaintiff sending an employee to defendant’s office for the checks. The employee was required to wait a long time in defendant’s office before the checks were given to her. The fact that plaintiff was required to pay immediately for the wages of the iron workers who erected defendant’s buildings and pay substantial insurance premiums, together with the fact there was no large amount of profit in the contract prices, easily explains why plaintiff found it necessary to institute his suit on January 24, 1979 for the money owed him by defendant. The evidence established that plaintiff was not specifically called upon to erect the Cased Hole building until after or about the day the suit was filed. The Mitchell contract for the erection of the Cased Hole Building was not executed until February 2, 1979.
While the Schlumberger Cased Hole contract was a separate contract, as defendant contends, it was also a part of a pattern of work which plaintiff agreed to perform for defendant in 1978. It was executed on March 30, 1978, the same day the contract was executed for the erection of the Schlumberger Learning Center building which plaintiff erected, and upon which a substantial part of the judgment in his favor was based. The two Schlumberger contracts were tied together by the parties in that the total price provided for their performance was discounted by $1,800 conditioned upon the buildings being simultaneously constructed on adjoining lots. The pattern of similarity in the contracts involved in this litigation in the close time frame in which they were executed and partially performed, and the similar circumstances involved in the non-payment by defendant upon the four contracts performed by plaintiff justified the trial court in evaluating the entire relationship between plaintiff and defendant for the purpose of determining plaintiff’s liability for his refusal to erect the Cased Hole building. Plaintiff was justified in refusing to erect the Cased Hole building because of defendant’s refusal to pay him the consideration due on the Learning Center contract because the consideration contained in the contracts for the erection of the two buildings was tied together by the $1,800 discount allowed on the consideration for the erection of the two buildings. The circumstances in which plaintiff here found himself are analogous to the situations where subcontractors were permitted to abandon their contracts and collect for the work performed in the cases of Arendsen, Rosen-berger, and Ducote, supra. The breach by defendant of five of the series of contracts justifies plaintiff in refusing to perform the sixth contract. Plaintiff could not be expected to erect another building for defendant when he had not been fully paid for numerous other buildings which he had erected for defendant.
Plaintiff here was entitled to refuse to perform the Schlumberger Cased Hole contract and to sue for the money owed him on the other contracts.
Plaintiff answered the appeal, but asserted therein that he was satisfied with the trial court’s judgment and only desired it modified on appeal in the event it was modified pursuant to defendant’s appeal. Because we have concluded to affirm the judgment, we find it unnecessary to address the assignments of error raised in plaintiff’s brief in connection with his answer of defendant’s appeal.
Judgment AFFIRMED. Costs on appeal are assessed against appellant.

. It does contend there was an $18 error in calculation on the $640 awarded on the Schlumberger job because Alpine was not enti-tied to the discount but we conclude this contention is too inconsequential to deserve consideration.