444 So.2d 1260 (1983)
RIVER CITIES CONSTRUCTION COMPANY, INC., et al.
v.
BARNARD & BURK, INC.
No. 83 CA 0238.
Court of Appeal of Louisiana, First Circuit.
December 22, 1983.
Rehearing Denied January 19, 1984.
Writ Denied March 16, 1984.
*1262 John S. White, Jr., and John Dardeen, Baton Rouge, for plaintiffs-appellants River Cities Construction Company, Inc. and J. King Woolf, Jr., Judicial Liquid.
Boolus J. Boohaker, Baton Rouge, for plaintiff-appellee Louisiana National Bank of Baton Rouge.
Ray Dawson, Baton Rouge, for defendant in reconvention-appellee Ohio Casualty Insurance Co.
Henry J. Klein, and Gary J. Rouse, New Orleans, for defendant-appellant Barnard & Burk, Inc.
Before PONDER, WATKINS and CARTER, JJ.
CARTER, Judge.
This is a suit for damages arising out of the alleged breach of two construction contracts and for damages for wrongful destruction and defamation of a construction business.

FACTS
On August 27, 1976, River Cities Construction Company, Inc. (River Cities) and Barnard & Burk, Inc. (B & B) entered into a subcontract for the construction of dock facilities on the Mississippi River at the Peavy Grain Terminal in Remy, Louisiana. The ship and barge dock subcontract was to be performed for a price of $2,851,475.00; subsequent change orders extended the completion date and increased the contract price to $2,984,975.67.
On August 31, 1977, River Cities again entered into a subcontract with B & B. This subcontract was for the construction of a barge anchorage system at the same site. The contract price was $68,607.00, and the work was to commence upon receipt of a permit from the Army Corps of Engineers and be completed 45 days from commencement. B & B obligated itself to obtain the necessary permit and to furnish a copy to River Cities.
In February, 1978, River Cities notified B & B that it was unable to complete the barge anchorage subcontract and that it no longer intended to pursue construction contracts in the open market. Thereafter, B & B terminated the barge anchorage subcontract and obtained the services of another subcontractor.
River Cities filed the present suit on June 5, 1979, seeking recovery against B & B under three separate grounds: tort, contract, and unjust enrichment.[1] Plaintiff alleged that B & B wrongfully withheld payment of funds after completion of the ship and barge dock contract and then wrongfully attempted to cancel the second contract for the construction of the barge anchorage system. These wrongful acts allegedly caused the failure of River Cities' business and the losses suffered by plaintiff. B & B filed a reconventional demand alleging breach of contract by River Cities.[2]

Trial Court Findings
At the close of plaintiff's case, B & B moved for a directed verdict as to River *1263 Cities' defamation claim. The trial judge granted the motion, finding that two elements of a claim for defamation were not present, viz., publication and malice. This ruling by the trial judge was not appealed. The remaining portions of the case were submitted to the jury.
The jury found that River Cities was not entitled to recovery based on the fault of B & B nor was River Cities entitled to recovery for breach of contract, but the jury did find that B & B had been unjustly enriched at the expense of River Cities. As a result, the jury rendered judgment on the principal demand in favor of River Cities for $29,567.00. The jury rendered judgment in favor of B & B for $7,905.42 on the reconventional demand upon finding that River Cities breached its contract with B & B.

ASSIGNMENTS OF ERROR
Both River Cities and B & B appealed suspensively from the trial court judgment. River Cities alleges that it was error for the trial court to deny recovery for the wrongful destruction of its business. River Cities further assigns as error the denial of recovery to them for additional expenses under the barge anchorage subcontract and the grant of recovery to B & B for breach of the barge anchorage subcontract by River Cities. B & B contends that the trial court erred in granting a motion to strike B & B's claim for attorney fees incurred in defense of a frivolous defamation claim.

Wrongful Destruction of Business
River Cities contends it was error for the trial court to deny recovery by River Cities against B & B for the wrongful destruction of its business. In support of this contention, River Cities reasons that B & B should have timely paid the $298,497.57 due under the ship and barge dock subcontract pursuant to Article A6 of the subcontract. The provision requires the contractor to make final payment to the subcontractor within 30 days of completion of the work as certified by the contractor and after receipt of executed release of liens. River Cities contends that Article 6, when construed in light of Article G 2.1 and G 2.2.2 of the general conditions of the subcontract, indicates that payment is due 30 days after the contract representative has inspected and accepted the work.
River Cities contends that the trial court erroneously instructed the jury as to the final payment conditions and, in the alternative, that River Cities fully complied with the final payment conditions. River Cities Contends that B & B, by wrongfully withholding the monies due under the contract and by breaching the contract, caused the destruction of River Cities' business.
Under the terms of the contract, B & B was to make monthly progress payments for 90% of the work performed, thereby contemplating a 10% retainage of $298,497.57. The method whereby final payment would be made was also provided for in the contract.
In instructing the jury as to the law applicable in the case, the trial judge gave the following charge with respect to interpreting the final payment provisions under the contract.
"Article A6, Subcontract, termed FINAL PAYMENT:
`Final payment, constituting the entire unpaid balance of the subcontract sum, shall be paid by the contractor to the subcontractor 30 days after completion of the work as certified by the contractor and after receipt of a properly executed release of liens.'
Under the GENERAL CONDITIONS of the subcontract, which are designated G1.2.2, is provided:
`The subcontract documents are complementary, and what is required by one shall be as binding as if required by all. If there is any discrepancy between the provisions of the various subcontract documents, the provisions of a given subcontract document shall prevail over those of all subcontract documents named subsequent thereto in the following list:
1) Agreement, including addenda and modifications thereto.
2) Drawings.
3) Specifications.

*1264 4) Special conditions of the subcontract.
5) Supplementary GENERAL CONDITIONS of the subcontract.
6) GENERAL CONDITIONS of the subcontract. (That's what we're reading from.)
7) All subcontract documents other than those named in clauses G1.2.2.1 through G1.2.2.6 above.
And, finally, under GENERAL CONDITIONS of the subcontract, we have G9.3.3, and it also relates to FINAL PAYMENT:
`FINAL PAYMENT shall be made 30 days after approval of the invoice for final payment and subcontractor's delivery to the contractor of (1) a notarized affidavit that all payroll, bills for materials and equipment, and other indebtedness connected with the work for which the contractor or owner or his property might in any way be responsible, have been paid or otherwise satisfied; (2) consent of surety, if any, to final payment; (3) releases and waivers of liens, notices of intention to lien and/or liens or claims; and (4), if required by the contractor or the owner, other data establishing payment or satisfaction of all such obligations, such as receipts, releases and waivers of liens arising out of the subcontract, to the extent and in such form as may be designated by the contractor. If any subcontractor refuses to furnish a release or waiver required by the contractor or the owner, the subcontractor may furnish bond satisfactory to the contractor and owner to indemnify them against any such lien. If any such lien remains unsatisfied after all payments are made, the subcontractor shall refund to the contractor or the owner all monies that the latter may be compelled to pay in discharging such liens, including all costs and reasonable attorneys' fees.'
Now, those are the pertinent contract provisions in this case. The court interprets these contractual provisions consistent with the first sentence of G1.2.2 of the GENERAL CONDITIONS of the subcontract which provides that: `... what is required by one shall be as binding as if required by all.' Therefore, if there are two requirements for final payment under the agreement and four requirements for final payment under the GENERAL CONDITIONS, the latter provision is controlling.
As the court appreciates the word `discrepancy' utilized in the second sentence of G1.2.2, it is controlling where in the instance, and I'll give you an example, the agreement tells the contractor or owner to do a certain act whereas the GENERAL CONDITIONS tell the contractor or owner not to perform that act. That would be a discrepancy. But where there are requirements to be performed, if one says one requirement and the other says two, or in this case one says two requirements and the other says four requirements, it is not a discrepancy it is an additional requirement and the latter provision controls."
The trial court properly instructed the jury as to final payment conditions; therefore, it was necessary for River Cities to provide: (1) a notarized affidavit that all indebtedness for work for which contractor could be liable had been paid; (2) consent of surety to final payment; (3) releases and waivers of liens; and (4) any other data establishing payment of obligations as required by contractor to owner.
This River Cities did not do. Although River Cities submitted a notarized affidavit to B & B, it was made with the knowledge that the statement was false. All of River Cities' indebtedness had not been paid. The consent of the surety as to final payment had been sent to River Cities, but it was not proven that B & B even received a copy of it. Furthermore, although River Cities attempted to provide B & B with releases and waivers of liens, it never successfully did so.
Because River Cities did not comply with the final payment provisions under the contract, B & B properly withheld final payment.[3] Therefore, B & B cannot be *1265 held liable for damages which may have resulted from the non-payment of such retainage.
This assignment lacks merit.

Breach of Barge Anchorage Subcontract
River Cities contends that the trial court erred in denying recovery to River Cities for additional expenses incurred in the barge anchorage subcontract and in granting recovery to B & B on the basis of River Cities' alleged breach of the subcontract. River Cities contends that B & B breached its obligation to timely obtain the necessary permits for work to begin under the barge anchorage subcontract. River Cities reasons that B & B's delay in obtaining the permit was unreasonable and that, as a result of this delay, it became impossible for River Cities to perform its contract obligations.
The subcontract for the barge anchorage system was executed on August 31, 1977, for a price of $68,607.00. The contract stipulated that the permit to perform the work would be obtained from the governing authority by the contractor (B & B). Although no time period was specified in the contract, the evidence established that it usually took four to six weeks to obtain the necessary permit. In September and October of 1977, River Cities, with B & B's approval, prefabricated the components so they could immediately install the structures on the site when the permit was issued. River Cities was paid $22,139.52 for this prefabrication.
In February, 1978, River Cities received a copy of the Corps of Engineers permit for construction of the barge anchorage system at the Peavy Grain docks dated January 30, 1978. At that time, River Cities could not commence work under the contract because the permit and the contract contained certain restrictions based on the river levels. The special conditions of the subcontract specified that concrete was not to be placed if the Mean Sea Level of the Mississippi River was above 5.0 feet. The Corps of Engineers permit provided that no pile driving operations could be performed during the period when the Donaldsonville gage exceeded 17.0 feet.
The evidence established that in February, 1978, the gage in Donaldsonville was close to 17.0 feet and that it would not have been possible to complete the contract within 45 days of receipt of the permit. On February 8, 1978, River Cities notified B & B that at that time "the river will not allow installation and will probably continue to prevent installation until sometime in May." River Cities also suggested that B & B pay $75.00 per day for the 91 days, which elapsed from the time prefabrication was completed to the date the permit was obtained, as extra compensation. River Cities also wanted $3,000.00 for transporting and unloading the prefabricated material. River Cities contemplated that completion of these two acts would constitute fulfillment of all obligations to both parties under the barge anchorage system subcontract.
B & B then terminated the contract with River Cities and engaged the services of a new contractor. The cost of the completion of the work performed by the new contractor exceeded the original contract price by $7,987.00, and the work was not completed until one year later.
If no time for performance is specified in a contract, a reasonable time is determined by the circumstances of each case. Owens v. Robinson, 329 So.2d 766 (La.App.2d Cir.1976); Perrin v. Hellback, 296 So.2d 342 (La.App. 4th Cir.1974), writ denied, 300 So.2d 184 (La.1974).
In the case sub judice, we have no difficulty concluding that B & B delayed performing its obligation under the contract for an unreasonable length of time. The contract required that River Cities complete the construction and installation of an entire barge anchorage system in 45 days after the permit was issued, yet six months elapsed before the permit was obtained by B & B, and once obtained River *1266 Cities could not commence work because of the river stage.
B & B failed to offer any evidence in support of justification for the delay in obtaining the permit, failed to establish any unusual problems, and failed to show any extraordinary difficulties or unique conditions which would warrant a finding that their delay in performance was reasonable and due to extenuating circumstances beyond their control. In the absence of such proof, we conclude that B & B's delay in obtaining the permit over this prolonged period of time was unreasonable and unjustified. The failure of B & B to deliver the permit within a reasonable time was a breach of the contract.
River Cities' nonperformance of its contract obligation did not constitute a breach of contract. River Cities' inaction was caused by B & B's prior default, and River Cities could not construct the barge anchorage system until the permit was obtained and the river stages were within acceptable levels. In analogous situations, the courts have held that subcontractors are justified in refusing to continue performance of the subcontract when the contract has been breached by the contractor. Giddens v. Alpine Const. Specialties, Inc., 401 So.2d 1026 (La.App.2d Cir.1981); R.J. Ducote Contractor, Inc. v. L.H. Bossier, Inc., 192 So.2d 179 (La.App. 1st Cir.1966); Rosenberger v. Hutchinson, 143 So.2d 604 (La.App. 4th Cir.1962); Arendsen v. Edw. D. Boyle & Co., 9 La.App. 367, 119 So. 282 (1928).
Based upon our finding that B & B breached its obligation to timely obtain the permit, we find that River Cities' failure to construct the barge anchorage system was justified. Therefore, the jury determination that River Cities breached the contract is manifestly erroneous and B & B is not entitled to damages. Accordingly, we reverse that portion of the trial court judgment which awarded $7,905.42 to B & B for River Cities' alleged breach of contract.
Having concluded that River Cities did not breach the contract, we must address River Cities' claim for damages for additional expenses incurred as a result of B & B's failure to timely obtain the necessary permit. A review of the record, however, reveals that no proof of such damage is contained therein. Therefore, we affirm that portion of the trial judgment denying River Cities' claim for additional expenses.

Attorney Fees for Frivolous Defamation Claim
B & B contends that it is entitled to attorney fees for the defense of a frivolous defamation claim pursuant to LSA-C.C. art. 2315.1 and that the trial judge erred when he granted River Cities' motion to strike the claim for such attorney fees.
On June 5, 1979, River Cities filed suit against B & B, alleging in part a claim for defamation. By amended answer filed June 4, 1981, B & B asserted that River Cities' defamation claim was frivolous and that B & B was entitled to attorney fees pursuant to LSA-C.C. art. 2315.1. River Cities then filed a motion to strike that portion of B & B's amended answer. River Cities based the motion to strike on the fact that at the time the answer was filed, LSA-C.C. art. 2315.1 had been repealed. By judgment dated August 17, 1981, the trial court granted the motion to strike upon finding that the attorney fees provision of LSA-C.C. art. 2315.1 was procedural and its repeal could have retroactive application. No appeal was taken from this judgment.
The merits of the entire case were tried by jury on October 19-21, 1982. At the close of plaintiff's case, trial court granted B & B's motion for directed verdict as to the defamation claim. The judgment of the trial court, dated November 15, 1982, disposed of the remaining issues which had been submitted to the jury. B & B and River Cities then perfected suspensive appeals.
Generally, attorney fees are not recoverable in civil cases unless specifically authorized by law or contract. Ricard v. State, 390 So.2d 882 (La.1980); Smith v. White, 398 So.2d 178 (La.App. 3rd Cir. 1981). The Louisiana legislature enacted Act No. 217 of 1976 which created LSA-C.C. *1267 art. 2315.1 and allowed a party to recover attorney fees in defamation cases. However, Act No. 324 of 1980 repealed Article 2315.1 of the Louisiana Civil Code. Therefore, from July 29, 1976, to July 15, 1980, attorney fees were allowed in actions for defamation filed pursuant to LSA-C.C. art. 2315.1.
The issue now before us is whether Act No. 324 of 1980 which repealed LSA-C.C. art. 2315.1 is procedural and should be applied retroactively thereby barring an award of attorney fees or whether the act is substantive and should be applied prospectively only.
Clearly, if a statute merely prescribes the method of enforcing a right which previously existed or maintaining redress for invasion of rights, it is classified as procedural. However, if the act creates a new obligation where no such obligation existed before, it is substantive. Guste v. Burris, 417 So.2d 445 (La.App. 1st Cir. 1982), reversed on other grounds, 427 So.2d 1178 (La.1983).
In Frito-Lay, Inc. v. Wapco Constructors, Inc., 520 F.Supp. 186, 189-191, (M.D.La.1981), Judge Polozola, in an excellently reasoned opinion, discussed this issue as follows:
"Art. 8 of the Louisiana Civil Code sets forth the rule of statutory construction in Louisiana:
`A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts.'
Generally a law is deemed to be prospective in effect unless its language clearly indicates otherwise or unless it fits within one of the exceptions to the rule which allows retroactive effect to laws which are interpretive, remedial, curative or procedural.
Procedural matters established by statute can have retroactive effect in the absence of law showing a contrary intention. However, substantive matters are presumed to be prospective in effect only, and they should not be applied retroactively unless the language used by the legislature shows a clear intent that they should be given retroactive effect.
Prior to July 29, 1976, Art. 2315 of the Louisiana Civil Code barred the award of punitive damages and attorney fees in defamation cases. After the adoption of La.C.C. Art. 2315.1, however, an individual could maintain an action in defamation and recover punitive damages and attorney fees if the statement was made with knowledge of its falsity or with reckless disregard of whether it was false or not...
It is clear that the intent of the Legislature was to eliminate specific awards for punitive damages and attorney fees in defamation cases. The right to recover punitive damages and attorney fees under article 2315.1 is a `substantive' law. In Manuel v. Carolina Casualty Insurance Company, 136 So.2d 275 (La. App. 3 Cir.1961), the Court defined `substantive law' as follows:
`The term "substantive law" is defined in Black's Law Dictionary Fourth Edition, as:
"That part of law which creates, defines, and regulates rights, as opposed to `adjective or remedial law,' which prescribed method of enforcing the rights or obtaining redress for their invasion. Maurizi v. Western Coal & Mining Co., 321 Mo. 378, 11 S.W.2d 268, 272; Mix v. Board of Com'rs of Nez Perce County, 18 Idaho 695, 112 P. 215, 220, 32 L.R.A., N.S., 534."
In Matney v. Blue Ribbon, La.App. 2 Cir., 12 So.2d 249, 253 (Affirmed by Supreme Court, 202 La. 505, 12 So.2d 253), the Second Circuit Court of Appeal said:
"Black's Law Dictionary, 3d Ed., defines `substantive law' to be that part of the law which courts are established to administer as opposed to the rules according to which the substantive law itself is administered. It is that part of the law which creates, defines and regulates rights as opposed to adjective or remedial law which prescribes the method of enforcing *1268 rights or of obtaining redress of their invasion."'
The Court finds that Act 324 of 1980 which repealed Article 2315.1 clearly made a change in the substantive law in Louisiana insofar as the recovery of punitive damages and attorney fees in defamation cases is concerned. Clearly, a law which repeals a substantive law and in so doing extinguishes a right and cause of action, is substantive itself. For this reason Act. No. 324 of 1980 cannot have retroactive effect and must, therefore, be applied prospectively only." (Citations omitted)
Once it is determined that LSA-C.C. art. 2315.1 and the repeal thereof are substantive, we must address the effect and appealability of the judgment granting the motion to strike B & B's claim for attorney fees.
LSA-C.C.P. art. 1841 provides that:
"A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled. It may be interlocutory or final.
A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment.
A judgment that determines the merits in whole or in part is a final judgment."
The jurisprudence also makes a clear distinction between the appealability of interlocutory and final judgments. A judgment which neither disposes of issues applicable to the merits, nor finally affects the merits, nor deprives defendant of benefits to which he may be entitled at final hearing, is a non-appealable interlocutory judgment. LSA-C.C.P. art. 1841, 2083; State Dept. of Hwys. v. Alexandria Land & L. Co., Inc., 284 So.2d 153 (La.App. 3rd Cir.1973). For a judgment to achieve the character of finality, it is necessary that it decide the merits in whole or in part. Devillier v. City of Opelousas, 243 So.2d 118 (La.App. 3rd Cir.1971).
Although motions to strike are generally interlocutory judgments from which appeals are unavailable absent a showing of irreparable injury,[4] the court in Devillier v. City of Opelousas, supra, noted that:
"`An interlocutory judgment should not trench upon the merits of the cause; but the moment that it does, it acquires a character of finality which assimilates it to a final judgment and renders it appealable. It is not essential for a judgment to be final that it settle all the rights existing between the parties to the suit. All that is required is, that it determine issues involved on the merit of the action.'" Cary v. Richardson, 35 La.Ann. 505, 506 (1883).
In the present case, the trial court judgment granting the motion to strike disposes of a substantive issue on the merits; therefore, it is a final judgment.
When an appellant fails to timely take and perfect his appeal, the appellate court lacks jurisdiction to hear the appeal. Siracusa v. Kramer, 271 So.2d 546 (La. App. 1st Cir.1972), writ denied, 273 So.2d 843 (La.1973). The judgment granting the motion to strike the claim for attorney fees under LSA-C.C. art. 2315.1 was signed on August 17, 1981. B & B did not appeal this judgment within the delays allowed by LSA-C.C.P. arts. 2087 and 2123. Therefore, this issue is not properly before this court.
For the above reasons, the judgment of the trial court is affirmed, insofar as it denies River Cities' claims for damages for wrongful destruction of business and additional expenses, and is reversed, insofar as it awards damages of $7,905.42 to B & B for breach of contract. Costs of this appeal are to be assessed against defendant-appellee Barnard and Burk, Inc.
AFFIRMED in part; REVERSED in part.
PONDER, J., concurs and assigns reasons.
*1269 PONDER, Judge, concurring:
I agree with the conclusion and with all parts of the decision except that I find it unnecessary to decide at length that the statute was substantive. The judgment was a final one disposing of the issue of attorney's fees. It had to be appealed within the appropriate time. When we conclude, as we do, that the issue is not properly before the court, the discussion of substantive vs. procedural becomes moot and the statements become dicta.

ON APPLICATION FOR REHEARING
PER CURIAM:
It has been called to our attention in an application for rehearing that we affirmed the trial court judgment insofar as it denied River Cities' claim for damages for wrongful destruction of business and for additional expenses and reversed the judgment insofar as it awarded damages of $7,905.42 to B & B for breach of contract, and left the other portion of the judgment of the trial court undetermined. We intended to and now affirm the judgment of the trial court in all other respects.
NOTES
[1] The principal demand was originally filed by River Cities Construction Company, Inc. and Louisiana National Bank of Baton Rouge, as partial assignee, against Barnard & Burk, Inc. Pursuant to River Cities Const. Co. v. Barnard & Burk, 413 So.2d 666 (La.App. 1st Cir.1982), writ denied, 414 So.2d 775 (La.1982), J. King Woolf, Jr. was qualified as judicial liquidator of River Cities and substituted as party plaintiff.
[2] B & B also filed a third party demand alleging the liability of River Cities' surety, Ohio Casualty Insurance Company, who provided a performance bond for the ship and barge dock subcontract. The trial court dismissed the third party demand against Ohio Casualty. No appeal was taken from this judgment.
[3] B & B made payments totalling $268,930.94 from retainage due under the ship and barge dock subcontract to, or for the account of, River Cities between June 5, 1978, and August 10, 1978. Only $29,567.00 of the retainage due remained unpaid at the time of trial.
[4] See Lanham v. Woodward, Wight & Co., Ltd., 386 So.2d 131 (La.App. 3rd Cir.1980), writ refused, 392 So.2d 668 (La.1980); Matte v. Continental Casualty Company, 185 So.2d 842 (La.App. 3rd Cir.1966).